No. 70,466

· In the Matter of PHILIP D. LUNT, *Respondent*.
(874 P.2d 1198)

Opinion filed May 27, 1994.

*Stanton A. Hazlett*, deputy disciplinary administrator, argued the cause, and *Bruce E. Miller*, disciplinary administrator, was with him on the brief for the petitioner.

*Philip D. Lunt* argued the cause and was on the brief pro se.

*Per Curiam*: This original proceeding in discipline was filed by the office of the Disciplinary Administrator against Philip D. Lunt, of Pratt, an attorney duly admitted to the practice of law in Kansas. The hearing panel of the Kansas Board for Discipline of Attorneys found that respondent violated Canons 1 and 9, DR 1-101 *et seq.* (1993 Kan. Ct. R. Annot. 202), and DR 9-101 *et seq.* (1993 Kan. Ct. R. Annot. 245), respectively, of the Code of Professional Responsibility, and Model Rules of Professional Conduct (MRPC) 1.15 (1993 Kan. Ct. R. Annot. 299) and 8.4 (1993 Kan. Ct. R. Annot. 347). The hearing panel recommended that respondent be indefinitely suspended from the practice of law. Respondent filed exceptions to the panel's report.

The misconduct by respondent occurred in his handling of funds in his possession which belonged to a client, Willis Bryan. The panel concluded that respondent had misappropriated the funds based on the following facts:

Paul Bryan, the son of Willis Bryan, filed a petition in bankruptcy. Willis Bryan originally was represented in that bankruptcy proceeding by Philip Lunt. In the bankruptcy action, Lunt filed an adversary complaint on July 3, 1986, on behalf of Willis Bryan. Approximately a year before the bankruptcy petition was filed, Paul had turned over his farm operation to Willis Bryan, transferring to him his interest in the crops and government payments. Paul also had given a security interest in the crops and government payments to People's State Bank (Bank). When the crops were harvested and the government payments were made, de-

mand was made for them by the bankruptcy trustee and by the Bank.

The government payments at issue were made in seven checks made payable to Willis Bryan but sent to the bankruptcy trustee. The checks are from the United States Department of Agriculture and are dated in September and December 1986. The trustee sent them to respondent in order to get Willis Bryan to endorse them. "Payable to Philip D. Lunt Trust Account" was typed on the back of each check, and Willis Bryan signed them. The checks totaled $16,150.16. Respondent deposited the money into his trust account in January 1987. Respondent told the disciplinary panel that he had a written agreement with Willis Bryan to apply the money from the trust account to his fees, but he was unable to produce the document.

Evidence was presented that between November 1986 and May 1987, respondent billed Willis Bryan for professional services rendered. The checks which correspond to the statements are in the amounts of $140, $875, $14, $25, and $875; the cash payment was $25.

Respondent filed a petition in bankruptcy. In that bankruptcy proceeding, Willis Bryan filed a complaint to determine the dischargeability of the $16,150.16 debt respondent owed to him. The complaint alleged that the debt was "due to Lunt's fraud and defalcation while acting in a fiduciary capacity to Willis Bryan." Willis Bryan was neither listed nor scheduled as a creditor by respondent. Respondent signed a Journal Entry of Judgment by Agreement, which contained the following paragraph: "Philip Duane Lunt is indebted to Willis Bryan for $16,150.16. This amount represents Bryan's unearned and unaccounted for trust account monies deposited into Lunt's trust account." The journal entry also states that the indebtedness is not discharged, and judgment was granted against respondent and in favor of Willis Bryan for $16,150.16 plus prejudgment interest in the amount of $4,221.17, post-judgment interest, and costs.

At the time he agreed to sign the journal entry, respondent told Mark Lazzo, who was representing Willis Bryan, that he "was not agreeing to any type of a fraudulent transaction." The un-

derstanding between respondent and Lazzo was that it was a matter of defalcation rather than fraud.

Lazzo testified that at the time of the disciplinary hearing, none of the $16,150.16 had been recovered. He also testified that he was never able to find any record of what happened to the money.

Respondent told the disciplinary panel that he was a patient at the Menninger Clinic from May 7 to July 5-6, 1987, and that during that period, because he was closing his law practice, clients who went to his office were given their files. Respondent stated that it was his belief that Willis Bryan's file had been turned over to him at that time.

Respondent asserted that he had performed legal work in the amount of $6,950 for Willis Bryan from July through December 1986. The legal work was in connection with his representation of Willis Bryan in Paul Bryan's bankruptcy, and it began when he drafted the adversary complaint. The checks to Philip Lunt from Willis Bryan dated in 1986, which were introduced by the disciplinary administrator, total $1,089.

In written "testimony," respondent stated that he had kept computer records which included work performed but not billed. These were never produced. Respondent offered as the reason why work performed was not billed on a regular basis: "I had advised Mr. Bryan at the start of my representation of him in the matter that the legal work would involve a considerable sum." In his written "testimony," respondent asserts that the work he performed for Willis Bryan amounted to $2,350 in January 1987, $5,600 in February 1987, and $1,550 in March 1987. The total amount he is asserting for work performed from July 1986 through March 1987 is $16,450. Respondent did not offer an explanation why some work was billed and other work was not.

Respondent takes exceptions to the panel's findings. In so doing, he takes issue with the basis or reason for the findings and not the findings themselves. He does not deny that the records of his representation of Willis Bryan and the written fee agreement were not presented to the panel. He contends they exist but were absent because he does not have access to his files. He agrees with the finding of defalcation on his part but asserts that defalcation is not fraud or conversion.

Respondent maintains that he did not commit the violations found by the disciplinary panel. The disciplinary panel concluded that he had failed to account to his client, Willis Bryan, for the $16,510.16 held in trust or to account for attorney fees and expenses claimed to be due and owing from Bryan to respondent.

Respondent first argues that he could not have violated the Model Rules of Professional Conduct because all alleged conduct occurred before March 1, 1988, when the Model Rules were adopted. The Disciplinary Administrator correctly points out that there is a continuing duty to account for funds in trust accounts which was breached by respondent's ongoing failure. That failure spanned the periods before and after the adoption of the Model Rules, resulting in violation of both the Canons and the Model Rules.

He also argues that the journal entry of judgment by agreement that he signed was based on defalcation rather than fraud. We fail to see the significance of this distinction. Defalcation is the failure of a fiduciary to account for money received in his fiduciary capacity. As pointed out in the ABA/BNA Lawyers' Manual on Professional Conduct § 45:501 (1990):

> "Misappropriation is the umbrella term under which the different ways of misusing client funds are grouped. *Black's* defines it as '[t]he unauthorized, improper, or unlawful use of funds or other property for purposes other than that for which intended . . . including not only stealing but also unauthorized temporary use for [the] lawyer's own purpose, whether or not he derives any gain or benefit therefrom.' *Black's Law Dictionary* (6th Edition, 1990). It thus includes defalcation, defined in *Black's* as 'misappropriation of trust funds or money held in any fiduciary capacity, and failure to properly account for such funds,' and conversion, which is 'any unauthorized act which deprives an owner of his property permanently or for an indefinite time.' "

The panel determined that respondent misappropriated funds from his trust accounts and, in so doing, violated Canons 1 and 9 of the Code of Professional Responsibility and MRPC 1.15 and 8.4. We find that the panel's determination is supported by clear and convincing evidence, and we adopt the panel's findings.

In *In re Daily*, 248 Kan. 158, 167, 804 P.2d 993 (1991), we stated the mitigating factors to be considered in determining the appropriate sanction:

"(1) whether restitution has been made; (2) previous violations or absence thereof; (3) previous good character and reputation in the community; (4) the present or past attitude as shown by his/her cooperation during the hearing and acknowledgment of the violation; (5) support from friends and members of the bar; (6) any statement by complainant expressing satisfaction with restitution made and requesting no discipline; and (7) personal misfortune of the attorney if such misfortunes have contributed to violation of the code. [Citation omitted.]"

The panel found no mitigating factors. Misappropriation of a client's funds, whether called defalcation or fraud, is a very serious violation. The panel's recommendation is that the respondent be indefinitely suspended from the practice of law. The Disciplinary Administrator concurs in the panel's recommendations and cites ABA Standards for Imposing Lawyer Sanctions § 4.12 (1991) for the proposition that suspension is appropriate "when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client." The respondent also has three prior informal admonitions. We accept and concur in the panel's recommendation of indefinite suspension.

IT IS THEREFORE ORDERED that Philip D. Lunt be and he is hereby indefinitely suspended from the practice of law in the State of Kansas effective as of the date of this order.

IT IS FURTHER ORDERED that respondent shall comply with the provisions of Supreme Court Rule 218 (1993 Kan. Ct. R. Annot. 187).

IT IS FURTHER ORDERED that respondent shall make full restitution prior to making an application for reinstatement under Supreme Court Rule 219 (1993 Kan. Ct. R. Annot. 192).

IT IS FURTHER ORDERED that the costs of this proceeding be assessed to the respondent and that this opinion be published in the official Kansas Reports.